IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**LAYLA SHAYNE JOHNSON**                                                                 **PLAINTIFF**

**4:10CV00161-BRW**

**MICHAEL J. AUSTERE,**
**Commissioner of the**                                                                   **DEFENDANT**
**Social Security Administration**

<u>**ORDER**</u>

Pending is a review of the Commissioner's denial of Supplemental Security Income and Disability Insurance Benefits. Plaintiff and Defendant have submitted briefs (Doc. Nos. 12, 13). After reviewing the record, Plaintiff's request for relief is denied.

**I.     BACKGROUND**

    **A.     Procedural Background**

Plaintiff applied for Supplemental Security Income and Disability Insurance Benefits on March 27, 2007.[1] Plaintiff claimed to be unable to work starting on July 1, 2006.[2] The applications were initially denied on December 6, 2007,[3] and, after reconsideration, were denied again on March 13, 2008.[4] Administrative Law Judge ("ALJ") Robert L. Neighbors heard Plaintiff's case on June 11, 2009.[5] The ALJ denied benefits on July 22, 2009, finding that

---

[1] Administrative Record ("A.R.") 98-106.

[2] *Id.*

[3] A.R. 60-62.

[4] A.R. 67-70.

[5] A.R. 26-52.

1

Plaintiff was capable of performing past relevant work as a fast food worker and assembly line worker.[6] The Appeals Council denied Plaintiff's appeal on January 8, 2010.[7]

### B.   Factual Background

Plaintiff claims to be disabled due to mental and physical impairments.[8] At the time of the ALJ's decision, Plaintiff was 30 years old, and had not worked since July 1, 2006.[9] In 1988 Plaintiff was hit by a car while crossing the street, which resulted in brain trauma.[10] She was in a coma for three days, and had to relearn how to walk and talk.[11] The accident caused her to grow asymmetrically, with her left side being longer than the right side of her body.[12] In 2001, she was in a car accident that caused a broken femur, after which a metal rod was inserted in her leg.[13] The rod was later removed because it was not the correct size.[14]

---

[6] A.R. 6-19.

[7] A.R. 1-4.

[8] A.R. 100, 108.

[9] A.R. 25.

[10] A.R. 27.

[11] *Id.*

[12] A.R. 28. The only evidence of this impairment is anecdotal. None of the medical reports provide measurements that show the degree to which Plaintiff's extremities are asymmetrical. A note written by Dr. Richard Pellegrino stated that Plaintiff's left hand and foot were "much bigger" than her right. A.R. 365.

[13] A.R. 27.

[14] A.R. 28.

Plaintiff attended high school until the tenth or eleventh grade.[15] She does not remember which grade she was in when she dropped out.[16] Plaintiff said she left school because she was working nights as an exotic dancer.[17] She received a general education diploma ("GED") in 1995.[18] Plaintiff received some college credits at a community college.[19] Plaintiff has a past work history of fast food and factory work.[20] She claimed that the longest she ever worked in fast food or at a factory was six months.[21] From 1998-2005, she reported that she operated her own escort service.[22]

From July through September 2006, Plaintiff saw Dr. Ray Bollen at the Baptist Health Center in Malvern, Arkansas.[23] Dr. Bollen attempted to treat Plaintiff for anxiety, panic attacks, and for chronic left hip pain.[24] From July 2006 through February 2007, Plaintiff also sought help at Therapeutic Family Services, Inc ("TFC").[25] The therapists at TFC counseled Plaintiff for anxiety, depression, mood disorders, and memory problems.[26] In addition, the therapists

---

[15]A.R. 25.

[16]*Id.*

[17]A.R. 199.

[18]A.R. 25.

[19]*Id.*

[20]A.R. 26.

[21]*Id.*

[22]A.R. 26, 125.

[23]A.R. 184-88.

[24]*Id.*

[25]A.R.188- 200.

[26]*Id.*

3

attempted to develop anxiety coping and other life skills.[27] In August 2007, Dr. Absalom Tilley treated Plaintiff for bipolar and anxiety disorders.[28] Dr. Tilley later treated Plaintiff for other problems including ankle swelling.[29]

In November 2007, Plaintiff saw psychologist Michael P. Inman, PhD.[30] The psychologist diagnosed her in Axis I as bipolar, with psychotic features, and anxiety disorder; and in Axis II as having a personality disorder, with histrionic and antisocial traits.[31] A state agency psychologist, Rhonda Tanehill, PhD., also examined Plaintiff in November 2007.[32] Dr. Tanehill's diagnosis of Plaintiff was identical to Dr. Inman's,[33] with the exception of finding it likely that Plaintiff did not put forth her best effort on the tests.[34] In addition, Dr. Tanehill noted inconsistencies with the history provided by Plaintiff and the histories on the records she reviewed.[35]

In January 2008, Plaintiff checked herself into Levi Hospital for psychiatric services.[36] She reported feeling depressed and being unable to leave the bed, and was having difficulty

---

[27]*Id.*

[28]A.R. 286.

[29]A.R. 291.

[30]A.R. 205-12.

[31]A.R. 210.

[32]A.R. 214-223.

[33]A.R. 218-19

[34]A.R. 220.

[35]*Id.*

[36]A.R. 227-35.

4

caring for her children.[37] A urinalysis test was positive for THC and for benzodiazepines.[38] She was discharged after three days of inpatient treatment.[39] From March through July 2009, Plaintiff saw Dr. Jim Aukstuolis at TFC.[40] Dr. Aukstuolis provided a statement that said that Plaintiff had poor to no abilities to make occupational, performance, or personal-social adjustments or to engage successfully in other work-related activities.[41]

From January 2008 through May 2009, Plaintiff was treated at Pinnacle Physicians Group in the Sheridan Family Clinic for ankle pain and other maladies including her bipolar and anxiety disorders.[42] In April 2009, she was referred by Dr. Tilley to neurologist Dr. Richard G. Pellegrino.[43] Dr. Pellegrino noted that Plaintiff body was asymmetrical and this was likely the result of her childhood injury.[44] The doctor also noted that Plaintiff's memory problems were typical of someone with brain trauma.[45] Dr. Pellegrino reviewed data from an MRI and EEG

---

[37]*Id.*

[38]A.R. 228. Benzodiazepines are a family of drugs that includes Xanax and Klonopin, which were both prescribed to her at various times. Physicians' Desk Reference, 2126, 2649 (50th ed. 1996). Plaintiff's past drug use are among the inconsistencies in the medical records. She reported to Dr. Bollen that she had used marijuana and ecstacy in the past but not recently. During her intake at Levi Hospital she said that she used methamphetamine in the past, but had not done so in three years. A.R. 227.

[39]A.R. 237-35.

[40]A.R. 265-69.

[41]A.R. 265-66.

[42]A.R. 269-85.

[43]A.R. 364.

[44]*Id.*

[45]A.R. 367.

performed on Plaintiff.[46] His review of the MRI found that there was evidence of past brain damage.[47] He noted that the EEG results were mildly abnormal, but "not really that bad."[48]

## II. STANDARD

In reviewing the ALJ's decision, I must determine whether there is substantial evidence in the administrative record to support the ALJ's decision.[49] The review is limited and the decision of the ALJ must be affirmed "if the record contains substantial evidence to support it."[50] "Substantial evidence is less than a preponderance but enough so that a reasonable mind could find it adequate to support the decision."[51] Evidence that both supports and detracts from the ALJ's decision must be considered, but the decision cannot be reversed "merely because there exists substantial evidence supporting a different outcome."[52] "Rather, if, after reviewing the record, . . . it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, we must affirm the decision of the [ALJ]."[53] Thus, my job on review is to determine whether the ALJ's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error.[54]

---

[46]*Id.*

[47]*Id.*

[48]*Id.*

[49]42 U.S.C. § 405(g).

[50]*Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

[51]*Id.*

[52]*Id.*

[53]*Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (citations and quotations omitted).

[54]*Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g).

6

**III.   DISCUSSION**

Plaintiff argues that the ALJ's decision was not supported by substantial evidence for three reasons. First, the ALJ failed to perform a function-by-function evaluation in determining that Plaintiff could work at all levels of exertion. Second, the ALJ did not give proper consideration to the medical evidence of Plaintiff's mental impairments. Finally, the ALJ did not make an explicit finding on the physical and mental demands of Plaintiff's past relevant work.

To be eligible for disability benefits, a claimant "must establish a physical [or mental] impairment lasting at least one year that prevents him from engaging in any gainful activity."[55] A five-step sequential process is used to evaluate claims for disability benefits:[56]

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and finally, (5) whether the impairment prevents the claimant from doing any other work. When a determination that an individual is or is not disabled can be made at any step, evaluation under a subsequent step is unnecessary. Only if the final stage is reached does the fact finder consider the claimant's age, education, and work experience in light of his or her residual functional capacity.[57]

If the ALJ determines that the individual is not disabled at any step then evaluation of subsequent steps is unnecessary.[58] Neither side disputes that the ALJ denied benefits at step four, finding that Plaintiff's impairment would not prevent her from doing past relevant work.[59]

---

[55] *Fines v. Apfel*, 149 F.3d 893, 894 (8th Cir. 1998). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(A).

[56] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[57] *Bartlett v. Heckler*, 777 F.2d 1318, 1319 (8th Cir. 1985).

[58] Brief of Defendant, Doc. No. 21, p. 4 (citing *Barlett*, 777 F.2d at 1319).

[59] A.R. 16.

### A. Physical Impairments

Plaintiff argues that the ALJ erred by not considering Plaintiff's physical limitations in a function-by-function assessment. The ALJ determines the Residual Functional Capacity ("RFC") of a claimant using a "function-by-function assessment of that individual's ability to do work related activities based on all of the relevant evidence."[60] "[T]he RFC is ultimately a medical question that must find at least some support in the medical evidence of record."[61] Plaintiff's alleged physical impairments, the residual pain caused by her childhood accident and the 2001 accident, were discussed at the hearing and in the ALJ's decision.[62] The ALJ did not determine that Plaintiff had a severe physical impairment.[63] Thus, it was not necessary for the ALJ to make a function-by-function assessment of Plaintiff's physical limitations. The ALJ's findings on Plaintiff's physical impairment are supported by substantial evidence on the record. Additionally the ALJ found that Plaintiff's complaints of pain were not credible.[64]

    1. Medical evidence of physical impairment

Plaintiff had numerous fast food jobs after her 1988 and 2001 injuries.[65] It is also clear that her physical impairments did not prevent her from engaging in what can be assumed to be physically demanding work – exotic dancing[66] (I will refrain from making any assumptions about the physical requirements of Plaintiff's escort service work, which she described as

---

[60]*Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

[61]*Id.* (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

[62]A.R. 16, 26-28.

[63]A.R. 16.

[64]A.R. 17.

[65]A.R. 112-114.

[66]A.R. 199.

### A. Physical Impairments

Plaintiff argues that the ALJ erred by not considering Plaintiff's physical limitations in a function-by-function assessment. The ALJ determines the Residual Functional Capacity ("RFC") of a claimant using a "function-by-function assessment of that individual's ability to do work related activities based on all of the relevant evidence."[60] "[T]he RFC is ultimately a medical question that must find at least some support in the medical evidence of record."[61] Plaintiff's alleged physical impairments, the residual pain caused by her childhood accident and the 2001 accident, were discussed at the hearing and in the ALJ's decision.[62] The ALJ did not determine that Plaintiff had a severe physical impairment.[63] Thus, it was not necessary for the ALJ to make a function-by-function assessment of Plaintiff's physical limitations. The ALJ's findings on Plaintiff's physical impairment are supported by substantial evidence on the record. Additionally the ALJ found that Plaintiff's complaints of pain were not credible.[64]

    1. Medical evidence of physical impairment

Plaintiff had numerous fast food jobs after her 1988 and 2001 injuries.[65] It is also clear that her physical impairments did not prevent her from engaging in what can be assumed to be physically demanding work – exotic dancing[66] (I will refrain from making any assumptions about the physical requirements of Plaintiff's escort service work, which she described as

---

[60]*Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

[61]*Id.* (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

[62]A.R. 16, 26-28.

[63]A.R. 16.

[64]A.R. 17.

[65]A.R. 112-114.

[66]A.R. 199.

"accompanying gentleman").[67] The medical evidence to support Plaintiff's complaints of pain is scant.[68] The ALJ noted that Plaintiff saw a physician for swelling in her left ankle in May 2009, but an MRI showed no abnormal enhancement.[69] The neurologist Dr. Pellegrino noted Plaintiff's body was asymetrical, but found that she had full muscle strength, a normal gait, no signs of muscle atrophy, and a full range of motion.[70]

        2.    Credibility

As noted above the ALJ also found that Plaintiff's complaints of pain related to her alleged physical impairment were not credible.[71] In *Polaski v. Heckler* the Eighth Circuit adopted five factors that the ALJ must use to analyze the credibility of a claimant:[72]

    1. the claimant's daily activities;
    2. the duration, frequency and intensity of the pain;
    3. precipitating and aggravating factors;
    4. dosage, effectiveness and side effects of medication;
    5. functional restrictions.

However, the ALJ need not discuss every factor in relation to the claimant's credibility. I must "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so."[73] It is clear that the ALJ discounted Plaintiff's

---

[67]A.R. 135.

[68]A.R. 291.

[69]A.R. 19.

[70]A.R. 266-69.

[71]A.R. 17.

[72]751 F.2d 943, 948 (8th Cir. 1985).

[73]*Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (internal citations omitted).

credibility using the *Polaski* factors.[74] The testimony showed that Plaintiff could carry on daily activities including house work, caring for her children, cooking and driving, despite her alleged physical impairments.[75] The ALJ found that "[t]he performance of these activities is not inconsistent with the performance of many of the basic activities of work."[76] Additionally, the ALJ found that in terms of functional restrictions, "[t]he records fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled."[77] Ultimately, the ALJ found that Plaintiff "does have adequate ability to work and the claimant has overstated her sypmtomatology to some extent."[78] From this it appears that the ALJ gave a good reason for doubting the credibility of Plaintiff's subjective complaints. Because Plaintiff's physical impairment were found to not be severe, the ALJ did not have to perform a function-by-function evaluation when determining the RFC for Plaintiff's physical impairment.

    **B.**    **Consideration to the Medical Evidence of Plaintiff's Mental Impairments**

Plaintiff asserts that the ALJ failed to give full consideration to the evidence that Plaintiff's mental impairments would make her disabled from working. Plaintiff points to the statement from Dr. Aukstuolis, who described Plaintiff's work related mental functions as "poor/none" on an evaluation form.[79] The record contains substantial evidence on Plaintiff's

---

[74] A.R. 19-20. I will acknowledge that it appears the ALJ combined the discussion of physical and mental impairments while discussing the *Polaski* credibility factors, but it is possible to reasonably infer which parts of the discussion related solely to the physical impairments and which related only to the mental impairments. *Id*.

[75] A.R. 39-40.

[76] A.R. 19.

[77] *Id*.

[78] *Id*.

[79] A.R. 267-68.

mental impairment, but Dr. Aukstuolis provided the only evidence indicating that Plaintiff was disabled because of her mental impairment. Although evidence from treating physicians should be give significant weight,[80] the ALJ is not bound by the opinion of a treating physician if it is inconsistent with other evidence in the record.[81]

Defendant has shown that the opinion of Dr. Aukstuolis is inconsistent with other evidence on the record. Psychologist Dr. Inman, who examined Plaintiff in July 2007, stated that despite Plaintiff's poorly organized thought process, she was oriented to time, place and person, and could give correct information about herself.[82] Dr. Inman found that Plaintiff had a fair ability to think in the abstract, adequate ability to communicate, and intact cognitive abilities.[83] Dr. Inman found that Plaintiff's attention span was impaired to the extent that Plaintiff could not concentrate for a full work day, but her immediate attention was intact.[84] Dr. Imnan also noted Plaintiff's mild to moderate difficulty with persistence.[85] Plaintiff was examined by Dr. Tanehill in November 2007, and her report is also inconsistent with Dr. Aukstolis's opinion.[86] Dr. Tanehill found that Plaintiff had an appropriate affect and unremarkable speech.[87] Dr. Tanehill stated that Plaintiff was alert and oriented.[88] Moreover, Dr. Tanehill found that Plaintiff did well

---

[80]*Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

[81]*Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

[82]A.R. 208-209.

[83]A.R. 211.

[84]A.R. 211-12.

[85]A.R. 211.

[86]A.R. 214.

[87]A.R. 217.

[88]A.R. 218.

on memory testing, Plaintiff responded adequately to assessments of attention and concentration, and Plaintiff could perform tasks within acceptable time frames.[89] Dr. Tanehill also noted that she did not believe that Plaintiff put forth her best effort during the assessment.[90] Aside from the opinions of two examining psychologist, none of the medical evidence other than Dr. Aukstolis's opinion suggests that Plaintiff is disabled.[91] Plaintiff's medical records were reviewed by Dr. Kay Cogbill, who determined that there was no evidence of severe impairment that would prevent Plaintiff from doing unskilled work.[92] Dr. Cogbill also questioned the truthfulness of Plaintiff, noting that the records showed many inconsistencies.[93]

### C.     Findings on Physical and Mental Demands of Past Work

Plaintiff argues that the ALJ erred by not making explicit findings on the physical and mental demands of Plaintiff's past work, before determining that Plaintiff's impairments would not prevent her from resuming past work. The Eighth Circuit has said that the ALJ must "fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform past relevant work."[94] "Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is *generally performed* in the national economy, the claimant is found not to be

---

[89]A.R. 218-220.

[90]A.R. 220.

[91]A.R. 307-64.

[92]A.R. 253.

[93]*Id*.

[94]*Nimick v. Secretary of Health and Human Services*, 887 F.2d 864, 866 (8th Cir. 1989).

disabled."[95] The ALJ may rely on the testimony of a vocational expert when evaluating the physical and mental demands of past relevant work and a claimant's capacity to do that work.[96]

The ALJ's RFC was that Plaintiff could perform work where interpersonal contact was incidental to the work performed, where tasks are learned and performed by rote, involving few variables and little judgment, with simple, direct and concrete supervision.[97] The RFC was identical to the limitations identified by Dr. Cogbill in her review of the records.[98] It also appears to be supported by substantial evidence in the record. The ALJ asked the vocational expert if a hypothetical person with Plaintiff's impairment could perform Plaintiff's past relevant work with appropriate restrictions.[99] The vocational expert stated a hypothetical person with Plaintiff's impairment and restrictions could perform the past relevant work of assembly line worker or fast food worker.[100] The ALJ's decision explained that "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform [assembly line or fast food work] as actually performed."[101] I find that the ALJ adequately considered the demands of the past relevant work in relation to Plaintiff's impairment.

---

[95] *Lowe v. Apfel*, 226 F.3d 969, 973 (8th Cir. 2000) (emphasis added).

[96] *Wagner v. Astrue*, 499 F.3d 842, 854 (8 Cir. 2007).

[97] A.R. 16.

[98] A.R. 262.

[99] A.R. 41-42.

[100] *Id*.

[101] A.R. 20.

## CONCLUSION

The ALJ's decision is supported by substantial evidence. Plaintiff's request to reverse or remand the ALJ's decision is DENIED.

IT IS SO ORDERED this 22nd day of April, 2011.

>                /s/Billy Roy Wilson
>        UNITED STATES DISTRICT JUDGE